IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLIENA VOLYNSKAYA, | No. C 04-0839 SI |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF** |
| v. | |
| EPICENTRIC, INC. HEALTH & WELFARE PLAN, an ERISA plan, | |
| Defendant. | |

On October 12, 2007, the Court heard argument on the parties' summary judgment submissions after remand. After consideration of the parties' arguments and the administrative record, and applying the standard of review enunciated in *Abatie v. Alta Health & Life Insurance Company*, 458 F.3d 955 (9th Cir. 2006) (en banc), the Court hereby GRANTS summary judgment in favor of plaintiff, and REMANDS to the plan administrator for further proceedings consistent with this order.

**BACKGROUND**

**I.    Factual background**[1]

Plaintiff Illiena Volynskaya was employed as a customer support engineer for Epicentric, Inc., and was covered under Epicentric's employee welfare benefit plan, insured by Metropolitan Life Insurance ("MetLife"). The Plan provides long-term disability benefits in the event of a "disability." The Plan defines "disability" as a condition requiring a physician's care which prevents a claimant from

---

[1] The following is largely taken from Judge Conti's December 2, 2004 order. Neither party disputes the accuracy of the background section of that order.

working "at your Own Occupation" during the first 24 months of the condition. EPI00030. Plaintiff's job responsibilities required that she "[i]nterface with customers and prospective customers for troubleshooting and other technical assistance. Replicate and report problems and bugs. Generate technical notes and similar documentation." *Id*. at EPI00149. According to information provided by Epicentric, plaintiff's job "requires 100% typing while talking on the phone with customers." *Id*.

Plaintiff stopped working and was placed on short-term disability in April 2002. EPI00310-313. She filed a claim for long-term disability ("LTD") benefits in November 2002, claiming disability due to "overuse syndrome," fibromyalgia, and chronic fatigue syndrome. EPI00302-304. MetLife, serving as claims administrator, reviewed plaintiff's medical records and conducted telephone interviews with plaintiff's treating physicians. By letter dated January 9, 2003, MetLife informed plaintiff that her application for LTD benefits was approved based solely on the diagnosis of depression. EPI00088-89. The letter stated "[y]our medical records provided no objective evidence that either fibromyalgia or chronic fatigue syndrome causes a functional impairment severe enough to prevent the performance of your job duties." EPI00088.

Several months later while plaintiff continued to receive disability benefits, MetLife sought review of plaintiff's medical records by two Independent Physician Consultants ("IPCs"). The first, a board-certified psychiatrist, concluded in June 2003 that plaintiff was not disabled from a psychiatric condition. EPI00102-105. The second IPC, a board-certified rheumatologist, concluded in August 2003 that plaintiff's medical records did not provide "compelling objective evidence . . . to indicate that the [plaintiff] would not be able to perform the duties of a light or sedentary occupation." EPI00094.

On August 29, 2003, MetLife informed plaintiff by letter that it was terminating her LTD benefits based on its determination that plaintiff did not suffer from a "physical or mental functional impairment severe enough to prevent" plaintiff from performing her own job. EPI00195-196. With regard to plaintiff's claim of disability due to fibromyalgia, the letter stated,

> On 8-28-03, an IPC review was completed by a Board certified rheumatologist. His findings were as follows: "There is no compelling evidence[2] in the records reviewed to indicate that the claimant would not be able to perform sedentary to light duties.

---

[2] Dr. Lieberman's letter referred to "compelling objective evidence." MetLife's quotation from Dr. Lieberman's letter omitted "objective."

2

> According to the NIH Consensus Report on fibromyalgia (Dr. Frederick Wolfe, 1997), most patients with fibromyalgia should be able to perform the duties of a sedentary or light occupation. Wrist actigraphy analysis has shown fibromyalgia patients to be functional similar to control groups despite subjective complaints of pain. There is nothing specific in the records which would indicate that this claimant was different from typical patients with fibromyalgia."

EPI00196. The letter advised plaintiff of her right to an appeal, and instructed her to include with the appeal letter her reasons for protesting the decision and any additional information in support of the appeal. *Id*.

By an undated letter, plaintiff appealed the termination of her LTD benefits. EPI00087. Plaintiff's letter stated,

> As of today, I am unable to dress myself, cook, clean, drive and shop. I had someone type this for me. I can not sit for more than 5 minutes without being in pain and having to lie down. Because of pain, I am unable to focus and have to take naps every 2 hours. I also do not understand what wrist actigraphy has to do with pain which I have in my entire body. I believe that the standards on which you base your medical evaluations are unfair, outdated and biased in favor of your company. I am currently communicating with my doctor about additional medical evaluation.

*Id*. Plaintiff requested that MetLife send her the complete medical file MetLife reviewed in denying her claim, including a copy of the insurance policy and the report of the IPC rheumatologist. *Id*.[3]

After receiving plaintiff's appeal letter on September 30, 2003, MetLife had a "nurse consultant" review plaintiff's medical file, including the IPC reports. The nurse consultant concurred with the conclusion of the IPC reports that the file contained no objective medical findings indicating that plaintiff would be unable to perform a light or sedentary occupation. EPI00085-86. Although the nurse consultant opined that further medical documentation would have required additional medical review, no such additional material had been received at the time of the nurse consultant's review.[4]

Based on the nurse consultant's report, MetLife affirmed its decision terminating plaintiff's LTD benefits in a letter dated October 27, 2003. EPI00186-87. The letter stated,

> We had our nurse consultant review all the medical documentation previously provided by you as well as the 2 Independent Physician Consultant (IPC) reviews. As you did not provide any additional medical documentation regarding your diagnoses of Chronic Fatigue Syndrome and Chronic pain, there was nothing new to review. The nurse

---

[3] As discussed *infra*, the parties dispute whether MetLife in fact provided the file to plaintiff.

[4] The date on the nurse consultant's report is October 20, 2003. EPI00085.

3

> consultant did indicate that the medical documentation did not provide objective findings that would prevent you from performing a sedentary to light occupation. This was also the findings of the 2 IPC reviews.
>
> Even though you have the diagnoses of Chronic Fatigue Syndrome and Chronic Pain the medical documentation supplied by your physicians does not provide objective medical findings that would support your inability to perform your sedentary occupation as a Support Engineer. Therefore, the original claim determination was appropriate.

EPI00186-87. The letter informed plaintiff that she had exhausted her administrative remedies under the Plan, that no further appeals would be considered, and that she had the right to file a civil action. EPI00187.

By letter dated February 19, 2004, plaintiff's counsel advised MetLife that plaintiff was now represented by counsel, and requested that MetLife re-review plaintiff's claim. EPI00181. Mr. Fleishman's letter stated that MetLife's denial of plaintiff's claim was "precipitous" because plaintiff's appeal letter stated that she was currently communicating with her doctor about additional medical evaluation, and "[y]et, before she could send any additional medical information to you, you denied the appeal on October 27, 2003." *Id.* Mr. Fleishman enclosed a report written by Dr. Claire Targoff dated February 6, 2004. Dr. Targoff's report, addressed to plaintiff, states,

> You have been my patient since May 9, 2003. As you are well aware, you have had problems with chronic fatigue syndrome for approximately 10 years. . . .
>
> On physical examination you were noted to have the diffuse trigger points that are consistent with a diagnosis of fibromyalgia.
>
> Currently you continue to be unable to work. This is very common in patients with fibromyalgia and chronic fatigue. The pain becomes very intense and often the medications required to help control pain can also cause cognitive problems. One of the major problems I see so often in patients with fibromyalgia and chronic fatigue is that their symptoms are so variable, and they may have a good day in which they will be quite functional follows by days of severe pain and diminished level of function. Unfortunately it makes for a totally unreliable employee as you can never ben counted on to show up and work on any kind of a consistent basis. Additionally, the medications used for pain control can also cause problems with your cognitive function as well.

EPI00183. MetLife did not re-review plaintiff's claim or consider the February 6, 2004 report from Dr. Targoff.

## II.    Procedural background

On March 1, 2004, plaintiff filed this action challenging MetLife's termination. The parties filed

4

cross-motions for summary judgment, and Judge Conti granted summary judgment in favor of defendants. Judge Conti held that the Plan vested MetLife with discretion to interpret the terms of the Plan and determine eligibility for benefits, and thus that MetLife's termination of plaintiff's benefits for should be reviewed for an abuse of discretion. Judge Conti also held that MetLife acted reasonably when it determined that the medical evidence did not sufficiently establish the level of plaintiff's disability. Judge Conti noted that "MetLife relied on . . . the two ICP reports concluding that no objective medical evidence supported a functional impairment based on depression or fibromyalgia, the nurse consultant's review concluding the same, the lack of any statement by Plaintiff's treating physician that plaintiff's condition was totally disabling, and the absence of any objective testing to determine the severity of plaintiff's condition." Judge Conti also found that MetLife put plaintiff on notice as early as January 2003 that a diagnosis of fibromyalgia and self-reported symptoms were insufficient to support a claim under the Plan.

Plaintiff appealed, and by memorandum decision filed April 10, 2007, the Ninth Circuit affirmed in part and vacated and remanded in part. The Ninth Circuit affirmed Judge Conti's holding that the Plan unambiguously conveys discretion on MetLife. The court vacated and remanded the remainder of Judge Conti's decision in light of *Abatie v. Alta Health & Life Insurance Company*, 458 F.3d 955 (9th Cir. 2006) (en banc). The Ninth Circuit instructed:

> After the district court issued its decision, this Circuit fundamentally changed the manner in which courts review a decision by a fiduciary with a conflict of interest. *Abatie* held that a district court, even when reviewing for an abuse of discretion, must nonetheless consider a defendant's conflict of interest. The greater the conflict, the greater the "level of skepticism" a court must apply. Relevant to this inquiry are, among other things, the degree of an insurer's conflict and any failure to comply with procedural requirements. Both factors appear to be relevant here.
>
> From the existing record, it appears that MetLife has a structural conflict of interest; that is, it both funds the plan and determines whether to pay benefits. In addition, Volynskaya argues that MetLife violated several procedural requirements. For example, MetLife was required to inform Volynskaya "of any additional material or information necessary . . . to perfect [her] claim and an explanation of why such material or information [wa]s necessary." MetLife may not have done so. MetLife now complains that Volynskaya never submitted to objective diagnostic testing for fibromyalgia. However, Volynskaya argues that MetLife never informed her of the need for such testing. Similarly, MetLife was required to provide "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." It is unclear from the current record whether MetLife satisfied this obligation after Volynskaya requested her records.

5

Memorandum Decision at 3-4 (internal citations omitted). The Ninth Circuit instructed the district court on remand to "consider the degree of any conflict, to make factual findings regarding the alleged procedural violations, and to consider, in the first instance, the effect of *Abatie*." *Id*. at 4.

**DISCUSSION**

**I.     Standard of review as clarified in *Abatie***

In *Abatie*, the Ninth Circuit explained that where an ERISA plan grants discretion to a plan administrator, courts review the plan's decisions for abuse of discretion, but that such review is "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie*, 458 F.3d at 967.

> The level of skepticism with which a court reviews a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of the evidence in the record.

*Id*. at 968-69 (internal citations and quotations omitted). The court recognized that abuse of discretion review with any conflict weighed as a factor is "indefinite," but stated that trial courts "are familiar with the process of weighing a conflict of interest." *Id*. at 969. "What the district court is doing in an ERISA benefits denial case is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records." *Id*.

In adopting a "careful, case-by-case approach," the Ninth Circuit overruled its decision in *Atwood v. Newmont Gold Company*, 45 F.3d 1317 (9th Cir. 1995). *Atwood* required a plan participant to present "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Id*. at 1323. The *Abatie* court held that *Atwood* was inconsistent with Supreme Court precedent, and that *Atwood* placed an unreasonable burden on ERISA plaintiffs. "If the plaintiff could not make that threshold showing [as required in *Atwood*], we would uphold an administrator's decision

6

so long as it was 'grounded on *any* reasonable basis.'" *Abatie*, 458 F.3d at 969 (*quoting Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004)). "Going forward, plaintiffs will have the benefit of an abuse of discretion review that always considers the inherent conflict when a plan administrator is also the fiduciary." *Id*.

The *Abatie* court also clarified the standard of review when a plan administrator has exercised discretion but, in doing so, has made procedural errors such as failing to adhere to various procedures for giving notice, reporting, and claims processing. The court instructed,

> A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion. When an administrator can show that it has engaged in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity. A more serious procedural irregularity may weigh more heavily.

*Id*. at 972 (internal citations and quotations omitted).

## II. Standard of review in this case

The parties agree that an abuse of discretion standard applies, and that there is a structural conflict of interest. The parties dispute whether MetLife committed any procedural violations. The Ninth Circuit instructed this Court to make factual findings regarding any procedural violations because whether such violations occurred affects this Court's review of the denial of benefits.

Plaintiff asserts that MetLife committed three procedural violations: (1) failing to specify what additional material or information MetLife required in order for plaintiff to perfect her claim; (2) failing to provide plaintiff with a copy of her file; and (3) making a final decision on plaintiff's administrative appeal without waiting to see if plaintiff was going to submit additional evidence.

### A. Not telling what "objective evidence" required

ERISA regulations require that when a plan administrator denies a claim, the notification must provide "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503(g)(iii). Here, MetLife informed plaintiff that her medical records did not contain "objective"

7

or "compelling" evidence to support a disability finding based on fibromyalgia or chronic fatigue syndrome. In its January 9, 2003 letter approving long term disability benefits based on depression, but denying based on fibromyalgia and chronic fatigue syndrome, MetLife informed plaintiff that "[y]our medical records provided no objective evidence that either fibromyalgia or chronic fatigue syndrome causes a functional impairment severe enough to prevent the performance of your job duties." EPI00088. When MetLife terminated plaintiff's disability benefits, it informed plaintiff that a Board certified rheumatologist found that "[t]here is no compelling evidence in the records reviewed to indicate that the claimant would not be able to perform sedentary to light duties." EPI00196.

Defendant contends that it complied with the ERISA regulations by informing plaintiff that there was no "objective evidence" to support her claim of disability due to fibromyalgia or chronic fatigue syndrome. Plaintiff contends that if there were in fact tests that MetLife thought plaintiff should have undergone, MetLife was required to so inform plaintiff. Plaintiff notes that both in connection with the original summary judgment briefing before Judge Conti, and in the briefing on remand, MetLife has asserted that plaintiff could have submitted results of a Mental Status Exam or a Mini-Mental Status Exam or of neuropsychological testing. *See, e.g.*, Defendant's Opening Brief at 9:6-7.

The Court finds that MetLife violated 29 C.F.R. § 2560.503(g)(iii) by failing to provide "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." The plain language of that regulation requires a plan to provide a "description" of additional material or information necessary to perfect a claim, and an "explanation" of why such information is necessary. As the Ninth Circuit has stated regarding this regulation,

> In simple English, what [29 C.F.R. § 2560.503] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial; *if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.* There is nothing extraordinary about this; it's how civilized people communicate with each other regarding important matters.

*Booton v. Lockheed*, 110 F.3d 1461, 1463 (9th Cir. 1997). It is insufficient to simply inform a claimant that there is no "objective" evidence to support a disability claim without specifying what type of "objective" evidence would substantiate a claim. MetLife's statement in its August 29, 2003

termination letter that there was no "compelling" evidence to support plaintiff's claim is even more vague and problematic. *See Cheng v. UNUM*, 291 F. Supp. 2d 717, 721 (N.D. Ill. 2003) (finding violation of 29 C.F.R. § 2650.503 when plan informed claimant that if he had any "new, additional information to support [his] request for disability benefits," he should send it to plan); *Cf. Boyd v. Aetna*, 438 F. Supp. 2d 1134, 1154 (C.D. Cal. 2006) (holding, pre-*Abatie*, that plan engaged in significant procedural irregularity warranting *de novo* review when plan repeatedly informed claimant that there was "no objective evidence" to support claim but failed to specify what evidence was necessary or provide forms that would have elicited necessary information).

### B.    Providing file

ERISA regulations required MetLife to provide "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). When plaintiff appealed the termination of her benefits, she requested a copy of her claim file. EPI00087. The parties dispute whether MetLife provided the file.

MetLife states, on remand, that in investigating plaintiff's allegation that MetLife failed to provide her with a copy of her claim file, "MetLife discovered an inadvertent error that occurred in the production of the Administrative Record that unfortunately has escaped both parties up until now." Defendant's Reply at 4-5. Defendant states that two pages from the "Real Time diary notes"[5] were inadvertently omitted during the preparation of the Administrative Record; those pages contain a notation that a copy of the claim file was sent to the "EE" (employee) on September 30, 2003. *See* Broadwater Decl. Ex. A.

Plaintiff has filed a supplemental reply brief addressing the production of these two pages. Plaintiff accuses MetLife of lying and fabricating the two missing pages, and plaintiff's counsel cites

---

[5] These notes are a computer generated, chronological diary report that documents the activities and events related to MetLife's review of and determinations on plaintiff's claim. The notes contained in the administrative record are found at EPI00066-88. The upper right hand corner of these documents states the date the page was printed "Jun 15, 2004" and the page number of the document, e.g. "Page 1 of 23." The administrative record is missing pages "20 of 23" and "22 of 23"; these are the two pages attached to the Broadwater Declaration.

other cases in which MetLife has "played with the facts." *See Jagielski v. MetLife*, 2007 WL 2458139 (W.D. Pa. Aug. 24, 2007) (repeatedly noting that MetLife's counsel – different from counsel here – was "cagey" and engaged in "repeated and flagrant obfuscation, smoke screens and 'clever' couching of its statements of fact"); *see also* Fleishman Ex. A (declarations in *Hawkins-Dean v. MetLife*, (C.D. Cal.) in which MetLife employee retracts former sworn statement regarding late-produced document not in administrative record). Plaintiff has also submitted a declaration stating that she never received a copy of her claim file. *See* Volynskaya Decl. In any event, plaintiff also argues that, if nothing else, the fact that MetLife "lost" documents for over three years that should have been part of the administrative record is evidence that should heighten the standard of review under *Abatie*.

Based on the record, the Court is unable to determine why MetLife did not originally provide the two missing pages from the Administrative Record. While the Court cannot conclude that MetLife engaged in any misconduct as plaintiff alleges, the Court does find that at the very least, the peculiar circumstances under which MetLife has produced the two documents is another factor that heightens the Court's skepticism under *Abatie*.

### C. Making final decision before waiting to see if plaintiff was going to submit additional records

ERISA regulations require that when claimants appeal an adverse determination, benefit plans must "[p]rovide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(ii). ERISA regulations also provide that plan administrators "shall notify a claimant . . . of the plan's benefit determination on review within a reasonable period of time," but not later than 45 days after receipt of the claimant's request for review by the plan. 29 C.F.R. § 2650.503-1(i)(3)(i); 29 C.F.R. § 2650.503-1(i)(1)(i).[6]

Plaintiff contends that MetLife precipitously denied her appeal without allowing her the

---

[6] Plaintiff argues that because she had 180 days from the date of the adverse determination to file an appeal, *see* 29 C.F.R. § 2560.503-1(h)(4), MetLife should have accepted and reviewed the medical information that plaintiff submitted in February 2004, after the appeal was denied but within 180 days of the adverse determination. This argument lacks merit, however, because it ignores the applicable regulations which provide that plan administrators must act on an appeal no later than 45 days after receipt of the claimant's request. Plaintiff's February 2004 submission fell outside of the 45 day period.

10

opportunity to submit additional medical documentation, despite the fact that she informed MetLife that she was "communicating with my doctor about additional medical evaluation." EPI00087. Plaintiff notes that MetLife received her appeal letter on September 30, 2003, and denied her appeal 27 days later by letter dated October 27, 2003.

The Court cannot conclude that MetLife clearly violated the ERISA regulations concerning plaintiff's opportunity to submit additional materials, since MetLife was required to act on plaintiff's appeal within 45 days of receipt of the appeal. However, it would have been "reasonable" for MetLife to inquire of plaintiff whether she was, in fact, going to provide additional medical documentation prior to denying her claim. This is particularly so since MetLife had not, as discussed *supra*, told plaintiff what additional medical documentation would be necessary to perfect her claim.

### III.  MetLife abused its discretion

Accordingly, in light of the above discussion and as informed by *Abatie*, the Court reviews MetLife's benefits denial for abuse of discretion, while taking into account MetLife's structural conflict of interest and procedural violations. Plaintiff contends that MetLife abused its discretion because (1) she met her initial burden of showing she was disabled under the plan, (2) MetLife's doctor provided an equivocal opinion at best because he opined only that most people with fibromyalgia can perform sedentary work, and he did not opine that plaintiff can perform her own occupation, and (3) in reaching his opinion, MetLife's doctor looked for "compelling objective evidence," despite the fact that the policy does not require that disability be proven by "compelling objective evidence."

In connection with her claim for disability benefits, plaintiff submitted a May 9, 2003 report from her treating physician. Under "Assessment," Dr. Targoff wrote,

> Chronic fatigue/fibromyalgia with resolving repetitive stress syndrome. Ms. Volynskaya does give a history that certainly suggests a diagnosis of chronic fatigue syndrome. Currently, however, her findings are most consistent with fibromyalgia with diffuse trigger points. She unquestionably has a sleep disorder and I am concerned that she probably does have sleep apnea, which is potentially seriously aggravating her underlying pain syndrome. . . .

EPI00099.  Plaintiff also submitted a "Long Term Disability Claim Form Attending Physician Statement," which was completed by Dr. Arkady Goldstein. Dr. Goldstein diagnosed plaintiff with a

11

1 primary diagnosis of "overuse syndrome," and a secondary diagnosis of fibromyalgia and chronic
2 fatigue syndrome. EPI00109. Dr. Goldstein found that plaintiff was able to work "0" hours per day,
3 that she could not sit, stand or walk for any hours per day, that plaintiff was not able to climb,
4 twist/bend/stoop, or reach above shoulder level, but that plaintiff could operate a motor vehicle. *Id.* Dr.
5 Goldstein also noted on the form that he advised plaintiff not to return to work. *Id.* Finally, plaintiff
6 submitted her own statement regarding her level of functioning, stating that she was unable to dress
7 herself, cook, clean, drive and shop. EPI00087. Plaintiff stated that she had someone else type her
8 appeal letter for her, that she could not sit for more than 5 minutes without being in pain and needing
9 to lie down, and that she was unable to focus and required frequent naps. *Id.*

10 The Court finds that the information provided by plaintiff, especially the material submitted by
11 Dr. Goldstein, shows that plaintiff met the plan's definition of disability, namely that plaintiff was
12 receiving treatment from a physician on a continuing basis and that she was unable to earn more than
13 80% of her predisability earnings at her own occupation. EPI00030. In particular, Dr. Goldstein's
14 opinion that plaintiff could not work any hours per day, and that she could not sit for any amount of
15 time, shows that she was disabled from performing her occupation. *See also* EPI00112-148 (medical
16 records submitted by Dr. Goldstein).

17 In processing plaintiff's claim, MetLife did not dispute that plaintiff suffered from fibromyalgia
18 or chronic fatigue syndrome. Instead, MetLife concluded that plaintiff was not disabled from those
19 conditions. MetLife's letter terminating benefits stated,

> On 8-28-03, an IPC review was completed by a Board certified rheumatologist. His findings were as follows: "There is no compelling evidence in the records reviewed to indicate that the claimant would not be able to perform sedentary to light duties. According to the NIH Consensus Report on fibromyalgia (Dr. Frederick Wolfe, 1997), most patients with fibromyalgia should be able to perform the duties of a sedentary or light occupation. Wrist actigraphy analysis has shown fibromyalgia patients to be functional similar to control groups despite subjective complaints of pain. There is nothing specific in the records which would indicate that this claimant was different from typical patients with fibromyalgia."

25 EPI00196.

26 Plaintiff contends that MetLife abused its discretion because MetLife's doctor did not analyze
27 whether *plaintiff* was disabled from performing *her own occupation*, as required by the plan, and instead
28 only opined generally that plaintiff could perform light or sedentary work. Plaintiff notes that in

12

addition to being sedentary, her job required that be able to "interface with customers and prospective customers for troubleshooting and other technical assistance," "100% typing while talking on the phone with customers," and that she do so for 8 hours a day, 5 days a week. EPI00149.

The Court agrees. As an initial matter, the Court notes that plaintiff submitted evidence in the form of medical documentation and her own statements showing that, in fact, she could not perform sedentary work. However, even assuming that plaintiff could perform "sedentary work," such a finding is not equivalent to a finding that plaintiff could perform her own occupation and earn more than 80% of her predisability earnings. *See Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F. Supp. 2d 1221, 1231 (N.D. Cal. 2003) ("Plaintiff was employed as an engineer, which may be a sedentary occupation, but one that requires careful thought and concentration. Simply being able to perform sedentary work does not necessarily enable one to work as an engineer."); *see also Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003) (holding denial of benefits unreasonable and noting "[t]he fact that a majority of individuals suffering from fibromyalgia can work is the weakest possible evidence that [a claimant] can.").

MetLife contends that its doctor was not required to determine whether plaintiff met the Plan's definition of disability, and that his role was only to assess plaintiff's level of functioning. Instead, MetLife argues that MetLife "decision makers" reviewed all of the evidence in the file and made the ultimate decision that plaintiff was not disabled under the Plan. This is a distinction without a difference. Here, the denial letter stated that the reason MetLife was denying plaintiff's disability claim was based on the IPC review; there is nothing in the record to show that any decision maker specifically concluded that plaintiff was not disabled from performing her own occupation.

The Court also finds that MetLife abused its discretion by requiring "compelling objective" evidence of disability. As plaintiff correctly notes, the Plan does not require that disability be proved by "compelling objective" evidence. It is arbitrary to add new terms to the Plan, particularly when those terms are both imprecise and impose a higher evidentiary burden on a claimant. *See Saffle v. Sierra*, 93 F.3d 600, 608 (9th Cir. 1996) ("Imposition of conditions outside the plan amounts to arbitrary and capricious conduct.") (quotation omitted); *see also Saliamonas v. CNA*, 127 F. Supp. 2d 997, 1000 (N.D. Ill. 2001) (on *de novo* review, granting summary judgment in favor of the plaintiff because, *inter alia*,

13

"CNA notified Mr. Saliamonas that it was denying his claim because of a lack of "objective medical evidence" of disability. But nowhere in the Policy or the SPD does CNA indicate that its decisions will be based only on "objective medical evidence" of disability. The Policy is a contract, and CNA cannot simply add new terms.").

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby enters summary judgment in favor of plaintiff and against defendant. (Docket Nos. 45 and 46). The Court holds that MetLife abused its discretion when it terminated plaintiff's disability benefits on August 29, 2003, and that plaintiff is entitled to disability benefits as a result of fibromyalgia and chronic fatigue syndrome through that date. The Court REMANDS to the plan administrator to make determinations, consistent with this order, regarding plaintiff's eligibility for disability benefits after August 29, 2003. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-61 (9th Cir. 1996). Plaintiff has requested that the Court award attorneys' fees and costs. If plaintiff wishes to recover fees and costs, plaintiff may file a motion.

**IT IS SO ORDERED.**

Dated: October 16, 2007

SUSAN ILLSTON
United States District Judge